Case number 19-3025, Ryan D. Malone v. United States of America. Argument is not to exceed 15 minutes per side. Mr. Robertson for the panel. Good morning. Good morning, counsel. I do want to assure you before we begin that we are prepared for your cases this morning, that we have read your briefs and we will assume that any arguments that are not for them. But with that, you may proceed, Mr. Robinson. It's my understanding you have reserved four minutes for rebuttal. Is that right? That's correct, your honor. All right, you may proceed. May it please the court, Emmett Robinson for appellant Ryan Malone. Now, there are three overarching issues in this case, two of which I submit have already been put to bed. The first issue is, of course, the substantive one, the Mathis issue. Whether or not the Ohio statute sweeps more broadly than the guidelines definition of a controlled substance offense. Now, in our opening brief, we explained in detail, applying Mathis, why it is the case that the Ohio statute sweeps more broadly. And the government, in its opposition, doesn't say a word to the contrary to that. Now, there is a distinction there. The government does say that the state of the case was such at the time of Mr. Malone's sentencing, that it wasn't unreasonable for counsel to decide not to raise the issue on appeal. But that is a very different issue from the merits of the issue itself. And whether the text of the statute sweeps more broadly than the text of this guidelines definition, which again, is undisputed by the government. And I believe, pursuant to this court's precedent, the government has waived that issue at this point. The second issue is, of course, the first problem of Strickland. And as we all know well, that's counsel was deficient or unreasonable in his decision not to raise this argument on appeal. This issue, too, has already been decided. It's been decided by how many judges? Well, that's a great question. It's decided in an unsigned order. So, I don't know. The operating procedures are OP. You're just referring to the granting of assistance and ability. That's right. That's right. Is your position that that is binding law that decides the case? It's law of the case. What's the authority that binds this panel to have that issue already resolved in your favor? Sure. So, I refer you to In re Martinez, which is an order signed by Ms. Hunt earlier. Well, I'm sorry, last year. That's 2019 Lexus 480. There, the court held that the order was law of the case. And, of course, law of the case doesn't... So, we're not going to go back on that. You're obviously here arguing the issue, but it can't control... I mean, you don't have any authority that that would control the panel and having to come out the same way. The Supreme Court has told us that when we're deciding a certificate of appealability, the issue we're deciding is whether there's something colorable for our panel to hear. Understood. But I think there's also a distinction here because this was an explicit finding in the order. And if you look at this Martinez case, it's not simply the law of the case that the certificate isn't granted. Of course, that's always the case. It's whether or not the petition was a 2255 or not. So, the underlying issues that are, for lack of a better word, a holding in the order are binding, are law of the case. And now that doesn't mean, obviously, the precedent says that if there's extraordinary conditions, law of the case can be overruled. It's not like it's a published precedent or something like that. But I do think that however many judges, when the issue has been decided, it is a dispositive issue on whether or not to grant the certificate of appealability that it is law of the case. But obviously, we might not all agree on that. So, I'll give some back up arguments on that too. So, but that leads me, of course, to the third issue, which is the prejudice issue, whether or not it was prejudicial for appellate counsel to decline to raise this argument. And I think, you know, this one is certainly fully open to debate, but Supreme Court precedent... I think the second one is quite open to debate. I mean, your point is that the argument that wasn't raised was stronger than the two that were raised, correct? That's right. But the argument that wasn't raised, the authority at the time actually went against your client. We had, I think, unpublished, but we had authority on the topic at the time. There's nothing really obvious suggesting that the law would change the way it did. So, why is it the case that it was ineffective to not raise that argument as opposed to the two that were raised? Sure. So, it's essentially for the reasons that this court or a judge of this court said in the order. And that's number one, those issues that were raised, as you know, first, whether the weapon was used in commission of another felony. And second, whether the sentence was substantially reasonable. There was no real authority and no factual support for either one of those. Arguably, there was factual support for the idea that the weapon wasn't used. But there we had such a deferential standard of review. We had a clear error standard. And at the trial court, all that the government had to prove was by preponderance of the evidence that this weapon was involved in an incident that incurred hours earlier by the same person trapped in the same address, who was carrying the same implements. So, it's not exactly a viable argument. As far as a substantive reasonableness, I mean, I think we all know that when we're arguing substantive reasonableness, we're scraping the bottom of the barrel. You're making points effectively that those were weak arguments. But what was to say that the argument that wasn't made was particularly strong? Whether there was any precedent? Sure. So, there isn't good case law precedent, with the exception of Montanez. And Montanez, which is a published opinion, the court did say, albeit in dicta, that A2 does include qualifying and non-qualifying conduct. Now, there's an issue there. Montanez misinterpreted Wright to say that Wright held that. Wright doesn't hold that. The government's there. Wright holds that the statute as a whole includes qualifying and non-qualifying conduct. But here, Montanez said that about Wright, which is incorrect, but it also independently said, it quoted the statute and it said explicitly that this includes both qualifying and non-qualifying conduct. It is purely dicta. That being said, the text of the statute has to govern. I mean, regardless of what the case law says, here we don't even have a reported case law on point, but the text of the statute clearly is broader than the guidelines definition. And I think that the best evidence of that is, again, the government's decision here not to even argue that point, not to argue that these means here sweep more broadly than the means it issued in that case. I'm sorry, than the scope of the guidelines definition. Well, what's your best argument as to why it does sweep more broadly? I'll ask the government or someone will ask whether they've conceded the point, but what's your best argument that it does sweep more broadly? Sure. There are two main prompts to sweep more broadly. The first one is that it encompasses a reasonable cause to believe. So the defendant doesn't even have to have the intent to distribute, to manufacture, import, export, or any of those things. The intent doesn't even have to be held by the defendant. It can be held by a third party. So, you know, I posited in the brief a scenario that probably sounds strange to all of us, but I don't think it's all that strange in this world. A person goes to a friend's house. He takes some of his drugs for personal use. That friend was intended to sell those drugs to somebody else. That's swept within the scope of the Ohio statute, but it's not within the scope of the guideline definition. And that's only with the or another person's problem. That you have to include, you know, also the reasonable cause for belief, which makes it even broader than that. So those are the best arguments, I think, for the breadth of the statute. I'll turn briefly, if that's all right, to the second issue, the prejudice issue, which I think is clear here, assuming that the court agrees that we're by the merits and that we've established that appellate counsel was deficient. I think Melina Martinez makes clear that in the majority of cases, that simply applying the wrong guidelines range is prejudicial. There's a narrow exception, of course, Justice Kennedy made clear, for when a case is, I'm sorry, when a sentence is decided independent of, entirely independent of the guidelines. That's not the case here because Melina Martinez sets out that that doesn't mean that it's simply the sentence falls outside the guidelines. Rather, it has to be the case that the guidelines weren't even used as a starting point or as a benchmark or as a case as a beginning point to explain the decision to deviate. And here the trial court explicitly said at sentencing that the guidelines were, quote, a good start, that, quote, it's where I will start for sure. So it's as if she was reading Melina Martinez when she was handing out the sentence and making clear that while she was deviating from the guidelines, they still were the benchmark in the case. She also repeatedly made reference to the fact that it was a five-month variance and also that the variance was a small one. So I think that's both significant on the prejudice front. Additionally, the Warren case that I mentioned is, it's almost uncanny how similar it is to this case. Both the same offense, the same guidelines range, the same sentence imposed, similar criminal histories. Judge Adams there from here in the Northern District sentenced 120 months. This court reversed the remainder for which is the one that should have applied here. They said there wasn't significant enough justification for that extreme of a variance. So I think that, you know, even if this panel were to disagree on that point, which is reasonable, there was a dissent in Warren, it's still the case that there's a reasonable probability that some panel of this court would have found for my client and reversed and sent it back to the trial court. So that's why I think that the prejudice prong is open for us here. I see nothing, no other questions right now. I will reserve the balance of my time. Thank you. All right. Thank you, Mr. Robertson. You'll have your four minutes for a vote. Okay, let's hear from the government. Good morning, your honor. May it please the court, James Ewing for the United States. Malone's claim fails on both the deficiency and... Can you speak up, counsel? I can hear you, but it's quite faint. Yes, your honor. Is that better? That's better. Malone's claim fails on both the deficiency and prejudice prongs of Strickland. When Malone filed his brief in March of 2017, 18 jurists had looked at this issue, six from this court, and 12 from the 5th, 9th, 10th, and 11th Circuit Courts of Appeal, and it was 18 to nothing that Ohio Revised Code 2925.03a2 categorically qualified as a controlled substance offense for guidelines purposes. So instead of pressing that claim, which 18 appellate court judges, including your honor, Judge Boggs, had rejected on that date, appellant chose to go for the heartland of this case, and that was the issue of whether the government could link this felon-in-possession crime to a brutal underlying kidnapping for ransom. Now, if he would have been able to break that causal chain regarding the underlying kidnapping for ransom, that would have gone way beyond the four-level increase. That would have gone to the 3553a factors, and that would have really changed the aspect of the case. So that's why Malone's both trial counsel and appellant counsel went after that issue, as opposed to one that 18 appellate court judges... Are you saying those 18 appellate judges were wrong? Not wrong at the time, but wrong today? That's what your primary side has said. Your honor, respectfully, we did not concede that point. We believe that they were correctly decided. Mathis did nothing to that, because in six cases, Robinson and Wright from this court, Miles from the 9th circuit, Karam from the 10th circuit, and Donna Walker from the 11th circuit, all of those cases applied the categorical approach. So Mathis doesn't change anything in that regard. And in fact, since Mathis, so on the other side of Mathis, we have a reported case, and these were after... Granted, these are after Malone filed his brief, but we have a reported from the 4th circuit, Dean Walker, that came down in 2017, and a reported case from the 7th circuit from 20 days ago. Can I say it today? Your honor, I sent a letter over about these last two cases, albeit it was late. I sent it yesterday. All the cases that have been out there were not due report. My point is that even moving... This is a Strickland case, so the question is, what was the state of the law on the day that he filed his brief? However, even moving forward, the... That point, in fact, we cited six cases that said, that stood for the opposite proposition, that it categorically qualified. I'm happy to get into the merits on why those cases are correct. I don't think that the court necessarily needs to go there, but I'm happy to walk through the statute and explain why you cannot violate this Ohio statute by simply possessing drugs. You just can't do it. If you look at the A2, so you start with A, no person shall knowingly do any of the following, prepare to ship, ship, transport, deliver, prepare for distribution, or distribute. Let's take the easy ones first. No person shall knowingly distribute. Well, that counts because that's distribution for federal purposes. No person shall knowingly prepare for distribution. Well, if you're preparing drugs for distribution, you are possessing those drugs with the intent to distribute them. No person shall knowingly prepare for shipment. Well, if you're... Unless you're shipping the drugs to yourself, then you're shipping them to someone else, so you're possessing those drugs with the intent to distribute them. Now, if you are happen to be shipping them to yourself, now we get into the second aspect of the statute, which talks about the offender knowing or have reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person. And the reasonable cause to believe, we would point you to the Miles case from the Ninth Circuit. And the Miles case says, and I cited that incorrectly in my brief, the correct site to the Miles case is 266 Fed Appendix 534. My pen site was correct, but the main site was wrong. It says that reasonable cause to believe only applies to the third person. So if you have reasonable cause to believe that the person you're preparing to ship it to, for example, is going to sell it on, you have to get the drugs to that person. That's distribution. So the only... Okay, no person shall knowingly ship. Ship also is distribution. We're narrowing it down to transport, which is why Malone's counsel cites to the transport. And even his hypothetical, which he cites no Ohio case that was ever decided, and we would suggest that Moncrief versus Holder would indicate that that's not a valid way to look at the case. But even in his hypothetical, it doesn't work. Because if you have, say you have an individual who steals drugs from a drug dealer and transport them home in order to use them. Well, at that point, you got to look at the language that says is intended. At that point, the drugs, so it's present tense, moving forward into the future. So at that point, the drugs are intended for personal use by the thief. They're no longer intended for distribution by the drug dealer because he doesn't have the drugs anymore. So this, you know, this is why those 18 judges who looked hard at this statute said, you can't, and this is from Karam, you cannot violate this statute by simply possessing drugs. So we don't necessarily need to, the court doesn't necessarily need to reach the merits. How do you juxtapose those arguments, which I'm not saying are wrong, but with the prior order in this very case, says that this was clearly the stronger argument, which is the touchstone test for an effective assistance. Your Honor, we know from Buck versus Davis, which was a Supreme Court case in 2017, that the certificate of appealability is not coextensive with the merits of a case. And in fact, Buck versus Davis said that if you get into the merits and a certificate of appealability, and this is a quote, you're acting, the court is acting without jurisdiction on the certificate of appealability decision is essentially just a peek at the merits to figure out whether you need to brief and argue the case. And so, and to point, to make my point crystal clear in a case called Bullard, which was a reported case from this court in 2019, which ended up being, the Bullard ended up being about an Arizona statute that was an attempt statute. So it was clearly after Havis didn't count, but in the district court in Bullard, Bullard made this exact claim. My trial and appellate counsel were ineffective for failing to raise the fact that 2925.03A2 did not qualify as a controlled substance offense. This court denied a certificate of appealability in that case. And now we're not relying on that, but we're just saying that that just points up the fact that the certificate of appealability cannot be law of the case. It's not binding on this. And this is, this case is a perfect example. Once you get into it and you unpack it, you realize that Mathis really doesn't answer the mail at all because all, all six of these courts said that look at this before appellant filed his brief. And I can talk about Martinez in a minute. All six courts said it's categorically qualifies. So it doesn't even matter. The divisibility analysis is beside the point. It doesn't even matter whether the statute's divisible or not because the whole thing qualifies. Now talking about Martinez and my, my colleague says that Martinez was talked about A2 and dicta. That's absolutely right. If you look at Martinez, it was about two other subsections of 2925.03A, 0.03A6 and nine at the time, which were these offense, which was these bulk, bulk weight possession offenses. So the question is the you have this bulk weight, does that, uh, does that mean possession with intent to distribute? Uh, I think we lost you counsel. Okay. Uh, so Robinson and Karam both, both, both said specifically, you know, Martinez was wrong about that. Now the whole statute is divisible. The whole 2925.03 is divisible as a whole, but. Lost you again. A2 that Martin is a discussion of that was a misreading of right. This court reckoned that's equally as strong for us. Um, you know, the, the, uh, the district court was unequivocal in saying that her, uh, sentence was pegged not to the guidelines, but to the statutory maximum of 120 months. And this court has already said that that was a reasonable sentence. So I'm looking, I'm coding in at page ID eight 73 to eight 80. That's where the district court made this crystal clear guideline range of 92 to 115 months was quote inadequate. And the statutory maximum was quote the right sentence in this case. And she said, we agree on the prejudice question, whether the sentence would have been different back on remand, but whether the appellate council aired and the appeal might have been different. Yeah, I, I agree with that. He's right about that. That's the stand. I mean, we are, we are, we arguably, we arguably took on more of a standard, more of a burden than we should have in, in my brief by going all the way back to the district court and Bullard talked about this as well, because in Bullard, this is page Penn site page six 63. Now of this court's opinion in Bullard, uh, that because Bullard made, uh, ineffective assistance of council claims against both his trial council and his appellate council. And a Bullard said, you know, it's actually even harder to show ineffective assistance of appellate council. And we, you know, we, we agree with that because you look at cases like Smith versus Robbins from the Supreme court and Smith versus Robbins said, look, you're not, in fact, you should not raise every colorable claim. You should raise your best claims. And so that's what Malone's council did here in the face of 18 jurists who had said that this was not a meritorious claim. He went for the heartland of this case. Um, and the, even if he's, even if he was, um, even if he was, uh, right about that, any, any guideline, I guess our point on prejudice is it comes back to the same. We agree that he's right. That the standard is what he had gotten a remand as opposed to what he had gotten a new sentence. He's right about that. But the analysis comes back to the same from the district court. When the district court said I would have gone above the statutory max, had I been allowed to, then she's clearly saying, you know, I'm not relying on the guidelines in this sentence. And this court has, this court has already said that that 121 sentence was substantively reasonable. Melina Martinez makes the point that yes, why guidelines error will normally be enough for resentencing. That's not always the case. In some instances, a judge will make clear that their sentence does not based on the guidelines. This is one of those cases. I mean, her, her, the district court's language was unequivocal that she would have that, you know, he's got a violent history, the facts and circumstances of this case, the underlying, um, the underlying, uh, uh, kidnapping for ransom is really what distinguishes this case from Warren because in Warren, there was that there was a, there was this fight with Warren's brother in the jail, but the district court was very clear that it didn't rely on that, on that uncharged misconduct. And so Warren was just looking at, uh, Warren's criminal history. Well, that's not the case here. We have this egregious, uh, kidnapping for ransom, which was dismissed by the Ohio, by the Ohio courts. So therefore it's good decision to go after that aspect of the case, as opposed to, um, to press this claim on the 29, 25.0382. So we believe that we, just going back to the merits for a minute, um, because you know, I think it is important to indicate that we, we absolutely have not, we cited six cases saying that it categorically qualifies. So I'm not quite sure how you can say that we conceded on the merits. We also have, uh, we also have two, uh, two cases on direct appeal with this court right now that raised the same claim. One of them is named Duffy. And the other one, I believe is Ronald Smith. I may be wrong about the name of the second case, but, and we've, we've defended those. We've defended the, uh, Robinson and Wright, uh, as being correct in those cases, which are on direct appeal. You know, Malone wants to turn this into a de novo look as to whether this statute qualifies, but this is a Strickland case. This is, so he has to, he has to show that his counsel was deficient, constitutionally deficient, not even acting as counsel for failing to raise a claim that 18 appellate court judges had, had dismissed and had rejected at the time. And so we just don't believe he can make that showing, even if he could make that showing the district court has demonstrated, uh, by, by her unequivocal language that the, this, this defendant would have received the same sentence regardless of the guidelines. Uh, if 92 to one 15 is inadequate, and that was the word that she used inadequate, then a, a lower guideline range would certainly be inadequate too. I mean, so there's no, this is, again, this is one of those cases that Melina Martinez described that, uh, does not rely on the guidelines. So we believe that he, you know, we have the better of the argument on both the of course, he has to show both, uh, to, uh, uh, to prevail on a Strickland claim. And so we would ask this court to affirm. All right. Thank you, Mr. Uh, any further questions? Uh, okay. Um, Mr. Robinson. Thank you. I want to hit hard this idea that this was a foregone conclusion and that 18 jurors had considered this issue. Uh, you go going first of all, the, the, uh, the, uh, precedents of this, this court, it all starts. It ends with right, right? Analyze this issue more than any other decision of this court. And it's been half a paragraph on it. Uh, the right court, uh, judge box was on the panel, but he did not write the decision. It was district judge Lawson. Uh, the right court sailed through it in half a paragraph. It said they're equivalent because attended intended for sale or resale under the Ohio statute is subsumed with intent to distribute under the federal guidelines. That's, that's clearly wrong for, for two reasons. First, it disregards the fact that the intent under the Ohio statute can be held by another person, not by the defendant. That's one way that it's broadened. Another way is it disregards the fact that under the Ohio statute, you don't have to have intent. Uh, you don't have to have knowledge. You only have to have a reasonable cause to believe. That's, that's, that's, that's fundamental ways why right is wrong. Moving on to Montanez, I think we care to believe just modifies the end part of the test. The first part of the test is that you have to knowingly prepare ship transport, and that's quite intentional. And then you just have to know or have reasonable cause to believe that someone else is going to resell it. That's right. That's right. If, if, if the court believes that knowing transport is intended to distribute, then we lose the case. But I, I don't think that the language can bear that. I, I think that that's, that's the reason why this case, this court came back in a published decision and said, no, A2 contains both qualified and non-qualified conduct. Robinson, the Robinson case, this issue is addressed in literally one sentence that relies on right. As far as the out-of-circuit cases, it's important there. And I really, I urge the court to look at each of these decisions. None of them are very long. Certainly none of them are thorough and none of them comply with the current state of the law as handed down by the court in DeKalb and Mathis. Karam, the Karam case is kind of the out-of-circuit hinge for the government, but it says that the guidelines definition necessarily encompasses conduct that could have been charged under a different statute, but instead was charged on an overbroad one. Now that's, that's just bad law at this point. DeKalb made clear that that, that just isn't allowed. That's not the law. The Walker case from the 11th circuit, they admitted that the intent element was missing from the Ohio statute, but they said under their precedent, they could infer and be a necessary intent element, which is again, is no longer good law. That's from 2003. Miles, the 9th circuit, counsel talked about that case said that the reasonable cause belief didn't apply because they looked to the facts. They did the very thing that the 9th circuit was banned from doing in DeKalb five years later. So all of these cases in Miles and the Fuentes case are interpreting a different statutory, I'm sorry, different guidelines provision. None of these are even interpreting. So we think that it just can't simply be the case that out-of-circuit and unreported cases that deal with the issue in one to two sentences absolve counsel from, from raising an issue when that issue is juxtaposed against a generalized substantive reasonableness or the idea that this, that the firearm wasn't, wasn't related to this other offense. Final point, kidnapping for a ransom. He mentioned that's already covered in the four-point enhancement for the weapon. That is not properly considered. Here that the judge, the trial judge would be a violation of Warren. Even if the judge wants to impose that same sentence here again, in light of the 51 to 63 month guidelines rate, she would be, it would be uncommon on her under 33, 3553A6 to justify that deviation in the scope of that variance. And that's why we believe we should prevail. All right. Thank you, Mr. Robinson. Any further questions, Judge Boggs, Judge Radler? No, I'm fine. Okay. Case will be submitted and you may adjourn the court. This honorable court is now adjourned.